NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PATTY LEE SMITH, on behalf of herself and others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 06-4787 (JLL) |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| JOHNSON AND JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

For Plaintiff: Michael R. DiChiara (*Joseph & Herzfeld, LLP*)
              Michael D. Palmer (*Joseph & Herzfeld, LLP*)

For Defendant: Francis X. Dee (*McElroy, Deutsch, Mulvaney & Carpenter, LLP*)
            Stephen F. Payerle (*McElroy, Deutsch, Mulvaney & Carpenter, LLP*)
            Michael J. Ossip (*Morgan, Lewis & Bockius LLP*)
            Larry L. Turner (*Morgan, Lewis & Bockius LLP*)
            René M. Johnson (*Morgan, Lewis & Bockius LLP*)
            Thomas A. Linthorst (*Morgan, Lewis & Bockius LLP*)

**LINARES, District Judge.**

This matter comes before the Court on Defendant Johnson & Johnson's ("Defendant" or "J&J") motion for summary judgment [CM/ECF #82], filed on May 23, 2008.  Also before the Court at this time are Plaintiff Patty Lee Smith's ("Plaintiff" or "Smith") motion for conditional certification as a collective action [CM/ECF #85], Defendant's motion to strike Plaintiff's declaration [CM/ECF #97], Plaintiff's motion for leave to file certain exhibits to her reply brief (CM/ECF #122], and two motions by Plaintiff for leave to submit supplemental authority to the Court on cases from the District of Connecticut, the Western District of Washington, and the

Northern District of Florida [CM/ECF #123 & #126].  Defendant has also filed informal requests for leave to file sur-replies that the Court will consider herein [CM/ECF #127 & #130].   No oral argument was held.  Fed. R. Civ. P. 78.  For the reasons set forth in this Opinion, Defendant's motion for summary judgment is granted, Plaintiff's motion for conditional certification is denied, Defendant's motion to strike is denied, Plaintiff's motion to file exhibits inadvertently left out of one of her submissions is granted, and all other motions and requests to file sur-replies and supplemental authority are denied.

## INTRODUCTION

From 2001 through June 2004, Smith was employed by Ortho McNeill Pharmaceutical ("OMP") as a Professional Sales Representative.  (Def. 56.1 Statement at 2; Pl. 56.1 Statement at 2.)  In her capacity with OMP, she marketed prescription pharmaceutical products to doctors and hospital departments.  (Id.)  Regardless of her work schedule prior to March 2004 at OMP, it is undisputed between the parties that from "mid-March" 2004 through the end of her tenure at OMP on June 30, 2004, Smith did not work in excess of forty (40) hours per week.  (Def. 56.1 Statement at 2-3; Pl. 56.1 Statement at 4-5.)  After resigning from OMP, Smith was employed in capacities that are not relevant to the instant suit until April 2006.

From April 2006 to October 2006, Smith was employed by a division of J&J called McNeill Pediatrics ("McNeill") in the capacity of Senior Professional Sales Representative. (Def. 56.1 Statement at 5; Pl. 56.1 Statement at 12.)  Smith was trained by McNeill to promote Concerta, a prescription drug intended to treat attention-deficit disorders.  (Pl. 56.1 Statement at 5.)  As a Schedule II prescription drug, Concerta may only be dispensed via a prescription from a licensed professional, such as a physician.  (Def. 56.1 Statement at 3-4.)

Smith received a significant amount of training from McNeill in its "Creating Customer Value" program, in which J&J internally applies sales language and sales goals to the position of Senior Professional Sales Representative.  (Def. 56.1 Statement at 7; Pl. 56.1 Statement at 15.) J&J's Creating Customer Value Program calls for a representative to persuade[1] physicians to write prescriptions for the J&J product and identifies as sales prescriptions filled by pharmacies. (Def. 56.1 Statement at 7-8.)  In calling on a physician, identified as a customer in the Creating Customer Value program, the representative is directed to set objectives for the call; open the call with the physician; discover any needs or reservations possessed by the physician; discuss features, benefits, and objections; close by obtaining a commitment from the physician; and conduct a post-call analysis.  (Def. 56.1 Statement at 8.)  Smith understood her role in closing a call upon a physician as obtaining a commitments from the physician (including a commitment to prescribe Concerta) in order to increase sales via increasing prescriptions.  (Def. 56.1 Statement at 4, 10; Pl. 56.1 Statement at 21.)  Physician calls were generally quite short—less than two minutes—and although representatives reported back in detail to their supervisors at McNeill, the calls were generally conducted by the representative alone.  (Def. 56.1 Statement at 14; Pl. 56.1 Statement at 28-29.)

Representatives would be accompanied by their supervisors on calls approximately once per month.  (Def. 56.1 Statement at 14; Pl. 56.1 Statement at 29-30.)  Representatives were supervised and coached with respect to which physicians to call on, the frequency with which

---

[1]The Court notes that Plaintiff objects to the use of words such as "sell" or "solicit" with respect to the legal nature of Representative/physician relationship.  (Pl. 56.1 Statement at 16.) Such references within this statement of facts are intended by the Court not to make a legal determination of the role of the Representative in the relationship, but to document for the record what J&J's representatives do under J&J programs.

they did so, and given scripts and provided with visual aids to use by J&J.  (Pl. 56.1 Statement at 27, 30-31.)  Smith and other representatives, however, had input in developing their yearly goals, and were expected to plan, conduct, and manage a budget for quarterly promotional events for physicians.  (Def. 56.1 Statement at 16, 19-20; Pl. 56.1 Statement at 34, 40-41.)

Smith's compensation at McNeill consisted of benefits, a base salary of $66,000, participation in a quarterly incentive program based on sales of her product, participation in a stock bonus program, and a company car.  (Def. 56.1 Statement at 11-12; Pl. 56.1 Statement at 21.)  McNeill described the payouts from the quarterly incentive program as a commission or a bonus, and approximately 20% of Smith's total compensation came from the program.  (Def. 56.1 Statement at 12; Pl. 56.1 Statement at 24-25.)

This suit was initiated on October 3, 2006, by Joseph Faltaous,[2] alleging violations of 29 U.S.C. § 207, the overtime pay provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq..  Smith was added as a party on April 19, 2007, the date her consent to sue notice under the FLSA was filed in this Court. (CM/ECF #35.)  The Second Amended Complaint was filed by the consent of the parties on April 30, 2007, and J&J moved for summary judgment on said complaint on May 23, 2008.  Smith filed her motion for conditional certification on the same date, and additional motions followed.

## DISCUSSION

Prior to addressing the substantive motions, this Court will address the motions to file sur-replies submitted by the parties during the pendency of the summary judgment and conditional certification motions.  This Court will, without further discussion, grant Smith's

---

[2]Mr. Faltaous is no longer a plaintiff in this case.

4

motion to file the exhibits inadvertently omitted from her reply papers related to the conditional

certification issue.  (CM/ECF #122.)

       With respect to the various motions and requests of the parties to file additional briefing

and authority, the Court denies all such requests.  (CM/ECF #123, #126, #127, #130.)  There is

no need to "grant" a party's motion to supply additional authority.  To the extent that the

authority is persuasive to the Court and was not available when the original briefs were filed,

such authority will be considered.

       Additionally, the Court has not been able to identify an order on the docket for this matter

permitting the parties to file overlength briefs.  Both parties have failed to comply, in certain

documents submitted, with the requirements of Local Civil Rules 7.2(b) and (d).  See Local Civ.

R. 7.1(b), (d) (limiting length of initial and opposition briefs to no more than thirty pages in

proportional font).   While the Court is appreciative of the effort displayed by the parties in

keeping it apprised of developments in the law, it does not find that additional briefing is

required on any of the legal authority presented, and as the parties have already availed

themselves of generous brief lengths in the original motions, this Court finds it unnecessary to

permit additional submissions or sur-replies.

**A.**      **Summary Judgment**

       A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil

Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c).

       On a summary judgment motion, the moving party must show, first, that no genuine issue

of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then

shifts to the non-moving party to present evidence that a genuine issue of material fact compels a

trial.  Id. at 324.   In so presenting, the non-moving party must offer specific facts that establish a

genuine issue of material fact, not just "some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).   Thus, the

non-moving party may not rest upon the mere allegations or denials in its pleadings.  See

Celotex, 477 U.S. at 324.  Further, the non-moving party cannot rely on unsupported assertions,

bare allegations, or speculation to defeat summary judgment.  See Ridgewood Bd. of Educ. v.

N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).  The Court must, however, consider all facts

and their reasonable inferences in the light most favorable to the non-moving party.  See

Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

### 1.    Statute of Limitations

J&J argues that summary judgment must issue with respect to Smith's employment at

OMP, as the statute of limitations has run under the FLSA with respect to the portion of her

employment at OMP when she may have worked more than forty hours per week.  (Def. Br. at

22-23.)  Under the FSLA, an action must be commenced within three years of a violation.  29

U.S.C. § 255(a) (setting forth a three-year statute of limitations for willful violations and a two-

year statute of limitations for other violations).  An action is considered commenced when the

party is added to an action after filing a notice of consent to sue, and the statute of limitations

continues to run until that notice has been filed with the court.  29 U.S.C. § 216(b); Sperling v.

Hoffmann-La Roche, Inc., 24 F.3d 463, 469 (3d Cir. 1994).

Section 207 of the FLSA requires employers to compensate certain employees for overtime at a rate of one-and-one-half times their regular hourly wage.  29 U.S.C. § 207(a)(1).  In order to be entitled to the additional compensation, an employee must have worked more than forty hours in one week.  Id.

Here, Smith filed her notice of consent to sue and was added as a party plaintiff to this case on April 19, 2007.  Any claims she has prior to April 19, 2004 are time-barred under the FLSA, as the maximum period of latency permitted under the statute is three years.  29 U.S.C. § 216(b).  Smith has also admitted that she did not work in excess of forty hours per week at OMP at any time after March 2004.  The entirety of Smith's employment at OMP, which ended in June 2004, is either barred by the applicable statute of limitations or is not covered within the ambit of § 207(a)(1).  Summary judgment is, therefore, granted to J&J with respect to Smith's employment at OMP.

### 2.      Exemptions from the FLSA

With respect to Smith's employment at McNeill, J&J argues that the duties of her position placed her in either one of two categories exempted from the overtime pay requirement of the FLSA.  These categories are the outside sales exemption and the administrative exemption.  (Def. Br. at 24, 34.)  If Smith's position at McNeill falls into one of the exempted categories, J&J argues that it should be entitled to summary judgment in full.  Smith vociferously denies that her position at McNeill, that of a Senior Professional Sales Representative, is subject to either exemption.

### a.      The Outside Sales Exemption

The FLSA provides for exemptions from its minimum wage (§ 206) and overtime (§ 207)

provisions:

> The provisions of section 206 (except subsection (d) in the case of
> paragraph (1) of this subsection) and section 207 of this title shall
> not apply with respect to–
>
> **(1)** any employee employed in a bona fide executive,
> administrative, or professional capacity (including any employee
> employed in the capacity of academic administrative personnel or
> teacher in elementary or secondary schools), or in the capacity of
> outside salesman (as such terms are defined and delimited from
> time to time by regulations of the Secretary, subject to the
> provisions of subchapter II of chapter 5 of Title 5 . . .

29 U.S.C. § 213(a).  The applicable regulation defines the outside sales exemption in the

following manner:

> (a) The term "employee employed in the capacity of outside
> salesman" in section 13(a)(1) of the Act [29 U.S.C. § 213(a)(1)]
> shall mean any employee:
>
> (1) Whose primary duty is:
>
> > (i) making sales within the meaning of section 3(k)
> > of the Act, or
> >
> > (ii) obtaining orders or contracts for services or for
> > the use of facilities for which a consideration will be
> > paid by the client or customer; and
>
> (2) Who is customarily and regularly engaged away from the
> employer's place or places of business in performing such primary
> duty.

29 C.F.R. § 541.500.  The parties do not disagree on any other issue related to Smith's

classification as an outside salesperson under the meaning of § 213(a) except for the issue of

whether or not her duties included "making sales" within the meaning of the regulations.  (Def. Br. at 25; Pl. Opp. Br. at 16 n.9.)  J&J urges this Court to recognize that as prescription drug sales are driven by physician prescriptions, and Smith's job was to encourage said prescriptions, she was an outside salesperson for prescription pharmaceutical sales.  (Def. Br. at 25.)  Smith argues that despite her job's having "the trappings and the suits" of a sales position, she did not sell Concerta and her promotional work for J&J was in support of other employees' sales of pharmaceuticals to pharmacies or other dispensers of Concerta.  Pl. Opp. Br. at 17; <u>William Shakespeare</u>, <u>Hamlet</u>, act 1, sc. 2.

The outside sales exemption regulation refers back to the FLSA for a definition of "making sales."  29 C.F.R. § 541.500(a)(1)(i).  The definition cited in the regulation reads thus: "'Sale' or 'sell' includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition."  29 U.S.C. § 203(k).  The outside sales exemption regulations themselves contain additional language on what "making sales" means:

> (a) Section 541.500 requires that the employee be engaged in:
>
> > (1) Making sales within the meaning of section 3(k) of the Act, or
> >
> > (2) Obtaining orders or contracts for services or for the use of facilities.[3]
>
> (b) Sales within the meaning of section 3(k) of the Act include the transfer of title to tangible property, and in certain cases, of tangible and valuable evidences of intangible property. Section

---

[3]Neither party contends that Smith's employment concerned contracts for services or for the use of facilities, and this Court will not, therefore, address the regulations related to those activities.

> 3(k) of the Act states that "sale" or "sell" includes any sale,
> exchange, contract to sell, consignment for sale, shipment for sale,
> or other disposition.

29 C.F.R. § 541.501.  The outside sales exemption regulations also cover promotional activities, and distinguish between different types of such activity.  Promotional activity in support of one's own sales is exempt as incidental to the sales.  29 C.F.R. § 541.503(a).  If, however, an employee engages in promotional activity in assistance of another individual's sales, such promotional activity is not exempt.  Id.  A crucial inquiry in determining whether or not an individual's promotional work is exempt or not depends upon whether or not the promotional work involves obtaining a commitment for sales.  29 C.F.R. § 541.503(c).  The regulations discuss an example of a company's representative making a customer visit:

> Another example is a company representative who visits chain
> stores, arranges the merchandise on shelves, replenishes stock by
> replacing old with new merchandise, sets up displays and consults
> with the store manager when inventory runs low, but does not
> obtain a commitment for additional purchases. The arrangement of
> merchandise on the shelves or the replenishing of stock is not
> exempt work unless it is incidental to and in conjunction with the
> employee's own outside sales. Because the employee in this
> instance does not consummate the sale nor direct efforts toward the
> consummation of a sale, the work is not exempt outside sales
> work.

Id.  In examining the plain language of the statute and the regulations, this Court finds that Smith's position of Senior Professional Sales Representative occupies a somewhat ambiguous zone under the FLSA.  She did make calls on individual physicians in an attempt to obtain commitments from those physicians to make additional prescriptions of J&J's drug Concerta. Her compensation also depended, in part, on whether prescriptions for Concerta were filled

10

within her territory.  On the other hand, J&J does not sell any product directly to physicians; it may only sell Concerta to licensed dispensaries, such as pharmacies and hospitals, whose demand is driven by prescriptions brought in by patients.  Both Smith and J&J are prohibited by law from engaging in the kind of direct sales contemplated by the FLSA regulations, which admirably describe a standard business-to-business sales position, but fail to address the thornier issues arising in highly regulated industries such as prescription pharmaceuticals, where the chokepoint in product demand (the prescribing physician) is separated by law from the point of distribution for the drug manufacturer (pharmacies).

Several courts have addressed the issue of whether or not prescription pharmaceutical representatives make sales within the FLSA's definition of the outside sales exemption.  The Central District of California has issued a number of opinions, in cases arising under California law but utilizing FLSA analysis derived from federal jurisprudence, stating with certitude that pharmaceutical representatives such as Smith are exempt outside salespersons. See Barnick v. Wyeth, 522 F. Supp 2d 1257, 1263-65 (C.D. Cal. 2007) (finding pharmaceutical representative to be an exempt outside salesperson in both actual sales role and physician promotion role under California law); Rivera v. Schering Corp., No. 08-1743, slip op. at *3-4 (C.D. Cal. Aug. 14. 2008) (noting that sole issue was whether pharmaceutical representative conducted sales under California law and summarily finding that they do conduct sales); Brody v. Astrazeneca Pharm., LP, No. 06-6862, slip op. at *13 (C.D. Cal. June 11, 2008) (finding via indicia of sales factors that pharmaceutical representative was an exempt outside salesperson under California law); Menes v. Roche Labs., Inc., No. 07-1444, 2008 U.S. Dist. LEXIS 4230, at *5 (C.D. Cal. Jan. 7, 2008) (same); D'Este v. Bayer Corp., No. 07-3206, 2007 U.S. Dist. LEXIS 87229, at *13-16 (C.

D. Cal. Oct. 9, 2007) (defining "sale" for purposes of California law outside sales exemption in reference to the capacities of the parties in the purported sales relationship). Having read these cases, this Court concludes that they do not squarely or persuasively address the primary issue before this Court: namely, whether or not Smith's job involved "making sales" as defined in the FLSA regulations. See Ruggieri v. Boehringer Ingelheim Pharm., Inc., — F. Supp 2d —, 2008 WL 4917850, at *4-7 (D. Conn. 2008) ["Ruggieri II"] (finding that the California outside sales exception cases fail to address the meaning of "sales" in the federal regulations). Additionally, two of the California cases concede that under the FLSA regulations, a more formal sales relationship may be necessary than under the California outside sales exemption. Barnick, 522 F. Supp 2d at 1264 (noting, in dicta, that requesting a commitment from a physician was most likely necessary under the FLSA outside sales exemption); Rivera, No. 08-1743, slip op. at *4 n.3.

This Court finds the analysis of Ruggieri v. Boehringer Ingelheim Pharmaceuticals, Inc. more persuasive on the issue of how the FLSA outside sales exemption is applied. — F. Supp 2d —, 2008 WL 4889813 (D. Conn. 2008) ("Ruggieri I"). See also Ruggieri II, — F. Supp 2d —, 2008 WL 4917850, at *7-9. In Ruggieri I, the District of Connecticut denied summary judgment because under the strict construction of exemptions to the FLSA required by the Second Circuit, the pharmaceutical representatives in that case did not make sales under the terms of the FLSA regulations or under the functional definition utilized by California law. — F. Supp 2d —, 2008 WL 4889813, at *10-11, *15. Specifically, the Ruggieri I court held that simply because the pharmaceutical industry had no direct way to sell to physicians, the FLSA need not be read in such a manner as to accommodate the peculiarities of that industry, especially where the pharmaceutical company did engage in ordinary contractual sales arrangements with

12

other market participants, such as wholesalers.  Id. at *14-15.  In a subsequent motion to certify

an interlocutory appeal, the District of Connecticut in Ruggieri II engaged in a further analysis of

the outside sales exemption regulations and found that the FLSA regulations supported a

traditional reading of the word "sales," meaning that an employee "actually makes sales or

obtains orders or contracts."    — F. Supp 2d —, 2008 WL 4917850, at *7-9.

This Court agrees with the reasoning of Ruggieri II that the outside sales exemption

regulations do not encompass the kind of pharmaceutical representative presented here, who had

no capacity to "actually make sales" of Concerta.  Id. at *9.  Physicians, according to the record

before the Court, do indeed present a chokepoint in the sale of pharmaceuticals, but the nature of

the prescription system insulates them from being amenable to "sales" within the definition of

the applicable regulation: "any sale, exchange, contract to sell, consignment for sale, shipment

for sale, or other disposition."  29 C.F.R. § 541.501(b).  All of the terms listed in the regulation,

though not an exclusive list, refer to actions that represent a binding arrangement or preparation

for a binding arrangement that involves physical transfer (shipment) or a contractual relationship

with a middleman (consignment).  See, e.g., The American Heritage Dictionary 407, 1085 (2nd

coll. ed. 1991) (defining "sale" as "[t]he exchange of goods or services for an amount of money

or its equivalent" and "distribution" as "[a]rrangement or distribution" or "[a] final settlement").

Furthermore, the Third Circuit has emphasized that exemptions to the FLSA are to be narrowly

construed against employers, and this Court finds that expanding the list of activities in the

definition of sales to comprise the kind of presentation of information engaged in by Smith to

represent a bridge too far in interpreting both 29 U.S.C. § 213(a) and 29 C.F.R. § 541.501(b).

Davis v. Mountaire Farms, Inc., 453 F.3d 554, 556 (3d Cir. 2006).

Another portion of the regulations this Court finds instructive is the example of the company representative in 29 C.F.R. § 541.503(c).  In that example, the regulations use the words "commitment" and "consummate" interchangeably.  Id.  While J&J's sales program emphasizes obtaining a commitment from the physician during the kind of sales call that Smith performed, in no ordinary sense of the word "consummation" could one of Smith's sales calls end in the consummation of a sale.  Smith could only provide useful information to the physician, and could  not enter into an agreement regarding prescriptions by the physician.  This Court does not find that the regulations necessarily require consummation of a sale in the traditional sense of a signed order for delivery of services or goods.  But the regulations do require more than nonbinding declarations of intent to prescribe in response to promotional inducements of the kind offered by Smith in this case.  This Court finds that Smith does not fall within the outside sales exemption because her primary duty was not to make sales, and need not engage in any further analysis of the outside sales exemption issue.  Summary judgment on the issue of the outside sales exemption is, therefore, denied.

**b.      The Administrative Exemption**

The same statute that creates the outside sales exemption under the FLSA also creates an exemption for employees acting in an administrative capacity.  29 U.S.C. § 213(a)(1).  The regulations promulgated under the FLSA define the administrative exemption in the following way:

> (a) The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:
>
> (1) Compensated on a salary or fee basis at a rate of

14

not less than $455 per week (or $380 per week, if
employed in American Samoa by employers other
than the Federal Government), exclusive of board,
lodging or other facilities;

(2) Whose primary duty is the performance of office
or non-manual work directly related to the
management or general business operations of the
employer or the employer's customers; and

(3) Whose primary duty includes the exercise of
discretion and independent judgment with respect to
matters of significance.

29 C.F.R. § 541.200.  The parties agree that Smith meets the salary requirement, but dispute the

applicability of the remaining factors.  (Def. Br. at 35; Pl. Opp. Br. at 36.)  Defendant urges this

Court to find that the exemption applies broadly to employees engaged in marketing or

promotion roles such as Smith's.  (Def. Br. at 35-36.)  Plaintiff argues that the administrative

exemption applies only to employees making decisions about companywide marketing, rather

than an individual such as Smith who met only with physicians in a limited geographic area.  (Pl.

Opp. Br. at 38.)

Plaintiff notes that the Third Circuit has rendered a published decision on the

administrative exemption, Martin v. Cooper Electric Supply Co., 940 F.2d 896 (3d Cir. 1991).

(Pl. Opp. Br. at 38.)  In Martin, an electrical products wholesaler maintained that its inside

salespeople were exempt from the FLSA under the administrative exemption.  940 F.2d at 899.

The Martin court found that the administrative exemption regulations then in effect created an

administrative/production dichotomy, and that the defendant wholesaler's salespeople were

"production" workers in the business model of the defendant, which aimed to produce nothing

15

other than sales.  Id. at 901, 903-04.  The Third Circuit, therefore, declined to apply the

administrative exemption to the wholesaler's inside salespeople.  Id. at 905.

Smith urges this Court to apply certain statements in Martin to this case; those statements

indicate that an employee engaged in promotion work, like a Senior Pharmaceutical Sales

Representative for McNeill, must affect overall customer sales or general marketing strategy to

fall within the administrative exemption.  (Pl. Opp. Br. at 38-39.)  After ruling in the manner

described supra, Martin goes on to hold that an employee must substantially affect "the structure

of an employer's business operations and management policies" in order to be covered by the

administrative exemption.  940 F.2d at 906 (emphasis in original).  The current regulations,

however, differ significantly from the regulations analyzed in Martin, making part of Plaintiff's

argument distinguishable in the instant case.  (Pl. Opp. Br. at 40 n.41.)  The Martin regulations

defined work "directly related to management policies or general business operations" as limited

to employees performing "work of substantial importance to the management or operation of the

business."  The modern version of this portion of the regulations, updated on April 23, 2004,

dropped the "substantial importance" requirement.  Instead, the new regulations spell out a more

expansive administrative exemption:

> The phrase "directly related to the management or general business
> operations" refers to the type of work performed by the employee.
> To meet this requirement, an employee must perform work directly
> related to assisting with the running or servicing of the business, as
> distinguished, for example, from working on a manufacturing
> production line or selling a product in a retail or service
> establishment.

29 C.F.R. § 541.201(a).  Martin's holding concerning the "substantial importance" portion of the

16

administrative exemption, therefore, is potentially inapposite to the text of the current regulation at issue in this case.  940 F.2d at 905-06.

The numerous other cases cited by Smith concerning the "management or general business operations" prong of the administrative exemption mainly rely on interpretations of the old regulations.  See, e.g., Relyea v. Carman, Callahan and Ingham, L.L.P., No. 03-5580, 2006 U.S. Dist. LEXIS 63351, at *8 (E.D.N.Y. Sept. 6, 2006); Casas v. Conseco Fin. Corp., No. 00-1512, 2002 U.S. Dist. LEXIS 5775, at *19 (D. Minn. Mar. 31, 2002); Pl. Opp. Br. at 39 n.40.  Plaintiff does, however, cite to a case discussing the scope of the revisions in new regulations, Roe v. Debt Reduction Servs.  No. 05-330, 2007 U.S. Dist. LEXIS 31503 (E.D. Wa. Apr. 30, 2007).  In Roe, the Eastern District of Washington examined the statements made by the Department of Labor in promulgating the new regulations in 2004, and found that the regulations, while plainly failing to include the language relied upon by Martin, intended to retain much of the spirit of the pre-2004 regulations:

> In issuing the 2004 regulation, the Department of Labor ("DOL") recently explained that a business's administrative operations include such activities as "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control."  Administrative operations include not only the formulation of "management policies," but also "major assignments" and work that "affects business operations to a substantial degree."

No. 05-330, 2007 U.S. Dist. LEXIS 31503, at *9 (quoting Final Rule Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122, 22,138 (Apr. 23, 2004)).  The advisory language discussed in Roe contains this illuminating analysis from the Department of Labor on the 2004 regulations:

As explained in the 1949 Weiss Report, the administrative operations of the business include the work of employees "servicing" the business, such as, for example, "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." 1949 Weiss Report at 63. Much of this work, but not all, will relate directly to management policies. As the current regulations state at section 541.205(c), exempt administrative work includes not only those who participate in the formulation of management policies or in the operation of the business as a whole, but it "also includes a wide variety of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business." Therefore, the Department considers the primary duty test for the administrative exemption to be as protective as the existing regulations.

Final Rule Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122, 22,138 (Apr. 23, 2004).

It is apparent, therefore, from Roe's analysis and from the regulatory body's analysis of its own rules, that some substantial effect on the greater business affairs of the employer is required for the administrative exemption to apply, and that the second holding of Martin should still guide this Court's analysis of the administrative exemption, though the new regulations do not contemplate that administrative employees are solely those in top management and policy positions.  Id.

This Court finds that J&J has met its burden in demonstrating that Smith's role was an administrative advertising and marketing one with a substantial impact on J&J's business, rather than merely engaging in "the day-to-day carrying out of the business' affairs."  Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1125 (9th Cir. 2002); Roe No. 05-330, 2007 U.S. Dist. LEXIS

31503, at *8 n.2 (noting that the Department of Labor has explicitly approved of the analysis in Bothell). The two cases most on-point that support J&J's position are instructive. In Reich v. John Alden Life Insurance Co., the First Circuit found that insurance company marketing representatives, not engaged in sales, were subject to the administrative exemption. 126 F.3d 1, 12 (1st Cir. 1997). The role of the marketing representatives, as the individuals primarily responsible for educating the actual salespeople (insurance agents) and creating on-the-ground marketing strategies for their employer, was found to "affect John Alden's business operations to a substantial degree." John Alden Ins. Co., 126 F.3d at 12. Although Smith's role as a pharmaceutical representative was somewhat different from that of the marketing representatives in John Alden Insurance Co., as Smith did not promote to individuals who actually made sales, her role as an educator and promoter was roughly similar to that of the marketing representatives in John Alden Insurance Co.

The Southern District of New York recently found the administrative exemption to apply to pharmaceutical representatives in Amendola v. Bristol-Myers-Squibb Co. 558 F. Supp 2d 459, 476-77 (S.D.N.Y. 2008). In Amendola, the court found the analysis of John Alden Insurance persuasive, distinguished Martin because pharmaceutical representatives do not engage in sales, and held that pharmaceutical representatives perform work directly related to management or business operations within the meaning of 29 C.F.R. § 541.201. 558 F. Supp 2d at 475-77. In the instant case, Smith disputes whether or not she had the same discretion or authority as the representatives in Amendola to act positively to affect the management or business operations of J&J, as Smith claims she could not choose to see new physicians in order to increase prescriptions on her own initiative. Compare Amendola, 455 F. Supp 2d at 464, 477

19

(representatives had the capacity to determine physician contact) with Pl. 56.1 Statement at 30-31
(J&J dictated physicians to call upon and frequency with which to do so).  This Court finds that
despite this difference, Plaintiff in this case still performed tasks sufficiently within the scope of
the administrative exemption regulations, as interpreted persuasively by Amendola.  Plaintiff's
promotion and marketing of Concerta to physicians is an example of the kind of role that, while
it does not dictate corporate marketing policy, actually drives the market demand, and therefore
substantially affects operation of "a particular segment of the business."  Final Rule Defining and
Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and
Computer Employees, 69 Fed. Reg. 22,122, 22,138 (Apr. 23, 2004).

     Furthermore, as discussed in Amendola, a pharmaceutical representative is not a
"production" worker in the sense of Martin.  The business of a pharmaceutical company is not to
educate physicians about their products; it is to produce and distribute those products.  Smith's
role as a pharmaceutical representative is thus easily distinguished from the sales representatives
in Martin, who constituted the de facto production line for the wholesaler.  940 F.2d at 901, 903-
04.  The regulations state that "[w]ork directly related to management or general business
operations includes, but is not limited to, work in functional areas such as . . . advertising;
marketing . . . and similar activities."  29 C.F.R. § 541.201(b).  This Court, therefore, finds that
Smith's primary duty was the servicing of J&J's business through her promotional and
educational role with physicians, an advertising or marketing function.

     In order to qualify under the administrative exemption, an employee's primary
duty—here, marketing to physicians—must also include the "exercise of discretion and
independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a)(3).

> In general, the exercise of discretion and independent judgment
> involves the comparison and the evaluation of possible courses of
> conduct, and acting or making a decision after the various
> possibilities have been considered. The term "matters of
> significance" refers to the level of importance or consequence of
> the work performed.

29 C.F.R. § 202(a).  The regulations go on to provide a nonexhaustive list of ten factors that must

be applied in the fact-specific examination of whether or not an employee exercises the requisite

discretion and judgment.  An employee need not qualify under all ten factors: "[f]ederal courts

generally find that employees who meet at least two or three of these factors are exercising

discretion and independent judgment, although a case-by-case analysis is required."  Final Rule

Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside

Sales and Computer Employees, 69 Fed. Reg. 22,122, 22,143 (Apr. 23, 2004).  Employees may

still qualify under the administrative exemption if more than one person performs a task, or if an

employee receives meaningful supervision.  29 C.F.R. § 541.202(c)-(d).

Plaintiff's arguments to distinguish Amendola with respect to an absence of independent

judgment or exercise of discretion go to the fact that the Amendola representatives could add

new physicians to their call lists or exercise judgment in giving out samples, whereas Smith had

less discretion.  (Pl. Opp. Br. at 49.)  Simply because supervision and regulatory constraints exist,

however, is not a reason for refusing to apply the administrative exemption.  29 C.F.R. § 202(c)

("The fact that an employee's decision may be subject to review and that upon occasion the

decisions are revised or reversed after review does not mean that the employee is not exercising

discretion and independent judgment."); Amendola, 455 F. Supp 2d at 476 (finding that industry

regulation or detailed employer instructions do not necessarily prevent application of the

administrative exemption).  The Amendola court found, with respect to pharmaceutical

representatives, that a representative's ability to determine how often to visit a physician,

strategies to utilize on those calls, discretion in utilizing their promotional budgets, free from

immediate supervision, indicated that pharmaceutical representatives exercised independent

judgement and discretion.  455 F. Supp 2d at 477.  Although this Court has already noted that the

pharmaceutical representatives in Amendola has some more discretion than Smith, the difference

in quantity of discretion does not amount to a difference in kind.  Smith was able to request

permission to visit new physicians or update her marketing plan to be more effective in her

territory; the fact that she needed approval for these measures does not detract from the exercise

of her own judgment in these matters.  29 C.F.R. § 202(c); Pl. Opp. Br. at 45, 49.  Furthermore,

Smith is similar to the representatives in Amendola with respect to the general nature of the work

she performed, the lack of day-to-day supervision from her manager (who accompanied her only

monthly), and the manner in which she sought to have an impact on growing the market share of

Concerta in her territory, clearly a matter of importance to J&J.  455 F. Supp 2d at 477.

Independently of Amendola, this Court also finds that Smith's role satisfied at least two

of the 29 C.F.R. § 541.202(b) factors.  Smith's work in driving the market for Concerta within

her territory "affects business operations to a substantial degree," and she is involved, with her

manager,"is involved in planning long- or short-term business objectives" related to the

marketing of Concerta within her territory by means of her promotional events and her annual

marketing plan.  29 C.F.R. § 541.202(b).

In the post-reply filings by the parties, Plaintiff brought the Court's attention to two

additional cases on the administrative exemption.  Both are distinguishable.  In Turcotte v.

22

Renton Coil Spring Co., Inc., a salesperson was found to be outside the administrative exemption because her promotional role was not her primary duty, and that she utilized well-known skills and techniques subject to management review, rather than independent judgment.  No. 07-1689, 2008 WL 4542436, at *4-6 (W.D. Wa. Oct. 8, 2008).  This Court finds the analysis of Turcotte with respect to the utilization of judgment distinguishable from the instant context.  Turcotte does not explicitly weigh 29 C.F.R. § 541.202(c)'s statements as to the effect of supervision, nor does it deal with an employee dedicated to in-the-field promotion with discretion, within limits, to organize quarterly promotion events.

In Talbott v. Lakeview Center, Inc., the court found that foster care and family services counselors did not fall under the administrative exemption.  No. 06-378, 2008 WL 4525012, at *4-7 (N.D. Fl. Sept. 30, 2008).  The Talbott court found that despite the employer's attempt to characterize their work as administrative within the "safety and health" area, the counselors did not have enough influence over the management in that area, nor the ability to exercise independent judgment, required to meet the exemption's requirements.  No. 06-378, 2008 WL 4525012, at *4-7.  While parallels could be made between family services counselors and pharmaceutical representatives, such a parallel would be specious.  The Talbott employees were clearly more similar to the Martin salespeople, dispensing the actual services that Lakeview contracted to provide, than pharmaceutical representatives in their promotional role with non-purchasers of J&J's product.  Talbott is factually distinguishable from the instant case.

This Court finds that Smith falls within the administrative exemption to the FLSA.  As an exempt employee, therefore, she is not entitled to payment of overtime, and summary judgment is granted on Defendant's motion.

**B.      Conditional Certification of the Collective FLSA Action and the Motion to Strike**

Having granted summary judgment, this Court will not consider the remaining motion of Plaintiff for conditional certification, notice, and equitable tolling, as such a motion is moot. Surrick v. Killion, 449 F.3d 520, 526 (3d Cir. 2006) ("The starting point for our mootness analysis is the familiar proposition that 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.'") (quoting DeFunis v. Odegaard, 416 U.S. 312, 316 (1974)).  Similarly, Defendant's motion to strike Plaintiff's certification in support of collective certification is also moot.  Both motions, therefore, are denied.

**CONCLUSION**

For the reasons heretofore given, Defendant's motion for summary judgment is granted. Additionally, Plaintiff's motion for leave to file inadvertently excluded exhibits is granted, Defendant's motion to strike Plaintiff's certification is denied, Plaintiff's motion for collectiver certification, equitable tolling, and notice is denied, and both parties' motions to file additional authority and sur-replies are denied.  An appropriate Order accompanies this Opinion.

DATED: December 30, 2008                      _/s/ Jose L. Linares_____

                                                        United States District Judge